02-11-010-CR












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.
02-11-00010-CR

 

 


 
 
 Christie Osborne
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

----------

 

FROM County
Criminal Court No. 6 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

         
Appellant Christie Osborne appeals her conviction for assault causing bodily
injury,[2]
contending in three points that the evidence is insufficient to disprove her
self-defense claim, that the evidence is insufficient
to support the trial court’s restitution order, and that numerous alleged
violations of evidence rules, which appellant did not raise at trial,
cumulatively prejudiced her defense.  We affirm.

Background
Facts[3]

         
Appellant and Joey Sansom dated each other for
several years.  More than a year after appellant and Sansom
broke up, Sansom began dating Kristina Aaron. 
Appellant and Sansom, however, remained close because
of Sansom’s interactions with appellant’s daughters,
whom Sansom had helped raise.  In 2008,
according to Aaron, appellant sent her a scolding text
message stating that Aaron was selfish and manipulative.  Aaron testified
that appellant also sent Sansom a text message
stating that she was going to “beat [Aaron’s] ass.”  According to Aaron,
appellant was upset because Sansom began refusing to
see appellant’s daughters.

         
In December 2009, appellant and her daughters went to Sansom’s
mother’s house, where Sansom was staying.  Sansom was planning to spend time with the girls that day,
but he had expected appellant to arrive later in the afternoon instead of about
11:30 in the morning.  While Aaron watched the children play a computer
game, appellant became agitated; according to Aaron, appellant was “mad that
[Aaron] was coming between the girls and [Sansom].” Sansom told appellant to leave,
but appellant moved closer to Aaron, called her a “bitch,” and grabbed her left
arm, which did not cause Aaron pain but “felt, like, a
force.”  Aaron then grabbed appellant’s hair; Aaron says that she did so
in self-defense.  Appellant, who is larger than Aaron, reciprocated by
grabbing Aaron’s hair, pulling her to the ground on a hard floor (which hurt
Aaron’s left shoulder), and hitting her in the face with a closed fist several
times.[4] 
Sansom eventually separated appellant and Aaron, and
appellant said, “She started it.”

         
Sansom and Aaron asserted that appellant was the
aggressor in the fight.  When asked at trial to describe what appellant
did physically to Aaron, Sansom said, 

Mainly just grab her by the hair and swing with her fist
and try and hit her in the head, about the shoulders, that kind of stuff. 
A whole lot of hair pulling.  I mean, they basically held on, you know,
each party.  And I tried to come in and break it up physically,
you know, put my arms between the two of them and pry them apart.  And I
walked around and tried to pull [appellant] off of [Aaron] and I guess that
wasn’t working too well, I just couldn’t pull both of them at the same
time.  I went back to trying to split them apart.  At that time all
three of us fell to the ground and [appellant] was kind of in a kneeling position
over the top of [Aaron] so I kept trying to pry them apart, get them apart and
use some physical activity to get them apart.

         
Aaron called the police.  An ambulance arrived and took Aaron to the
hospital, where medical personnel diagnosed her with a dislocated
shoulder.  Aaron’s injury required her to have surgery and to attend
physical therapy for approximately six months.

         
Appellant eventually turned herself in to the police and stated that she had
been assaulted first.  The State charged appellant with assault. 
Appellant pled not guilty and waived her right to a jury trial.  After
hearing testimony from four witnesses, the trial court found appellant
guilty.  The court sentenced appellant to ninety days’ confinement,
suspended that sentence, placed her on community supervision, and ordered her
to pay restitution for Aaron’s medical expenses.  Appellant filed notice
of this appeal.

Sufficiency
of the Evidence to Disprove Appellant’s Defense

         
In her first issue, appellant argues that the evidence is insufficient to
disprove her self-defense claim.[5] 
First, appellant contends that Aaron’s testimony and version of the altercation
supports, rather than precludes, appellant’s self-defense theory because Aaron
testified that appellant had only grabbed her left arm, and had not caused
pain, when Aaron grabbed appellant’s hair.  Appellant seems to contend,
therefore, that her response to having her hair pulled under Aaron’s version of
the facts (pulling Aaron’s hair, forcing Aaron to the ground, and hitting Aaron
in the face several times with a closed fist) was justified as self-defense.

         
A person commits assault by intentionally, knowingly, or recklessly causing bodily
injury to another.  Tex. Penal Code Ann. § 22.01(a)(1).
 It is well established, however, that a person is justified in using
force against another when and to the degree the person reasonably believes the
force is immediately necessary to protect against the other’s use or attempted
use of unlawful force.  Clifton v. State, 21 S.W.3d
906, 907 (Tex. App.—Fort Worth 2000, pet. ref’d); see Tex. Penal
Code Ann. § 9.31(a) (West 2011).

         
After the defendant introduces some evidence supporting a self-defense theory,
the State bears the burden of persuasion to disprove it.  Zuliani v. State, 97 S.W.3d
589, 594 (Tex. Crim. App. 2003) (explaining that a conviction produces an
implicit finding against the defensive theory); Saxton v. State, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991); Smith v.
State, No. 02-09-00394-CR, 2011 WL 2436774, at *5 (Tex. App.—Fort Worth
June 16, 2011, no pet.).  This burden does not require the State to
introduce evidence disproving the defense; rather, it requires the State to
prove its case beyond a reasonable doubt.  Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d
at 913; Smith, 2011 WL 2436774, at *5.  To determine the
sufficiency of the evidence to disprove self-defense, we ask whether, after
viewing all the evidence in the light most favorable to the prosecution, “any
rational trier of fact could have found the essential elements of the charged
offense beyond a reasonable doubt and also could have found against the appellant
on the self-defense issue beyond a reasonable doubt.”  Smith,
2011 WL 2436774, at *5 (citing Saxton, 804 S.W.2d
at 914).  We must resolve any conflicting inferences in favor of
the prosecution.  Id. at *4.  We are
not permitted to re-evaluate the trial court’s resolution of the weight and
credibility of the witnesses.  See id. (citing Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007)).

         
Appellant’s first argument about self-defense hinges on her contention that
under Aaron’s version of the facts, Aaron’s pulling appellant’s hair was the
first unlawful force, and that, therefore, appellant’s pulling Aaron’s hair and
punching appellant was justifiable self-defense.  But even if we were to
assume that Aaron’s pulling appellant’s hair in response to appellant’s
grabbing Aaron’s arm was unlawful, the penal code provides that the use of
force against another is not justified if “the actor provoked the other’s use
or attempted use of unlawful force.”  Tex. Penal Code Ann. § 9.31(b)(4).  As the court of criminal appeals explained in Smith
v. State,

         
Provoking the difficulty, as the doctrine of provocation is commonly referred
to in our jurisprudence, is a concept in criminal law which acts as a
limitation or total bar on a defendant’s right to self-defense.  The
phrase “provoking the difficulty” is a legal term of art, and more accurately
translates in modern usage to “provoked the attack.”  The rule of law is
that if the defendant provoked another to make an attack on him,
. . . the defendant forfeits his right of self-defense.

965
S.W.2d 509, 512 (Tex. Crim. App. 1998).
 In other words, one cannot “willingly and knowingly bring upon himself
the very necessity which he sets up for his own defense.”  Id. at 513–14.  The doctrine of provocation,
codified by section 9.31(b)(4), eliminates appellant’s
alleged justification of self-defense if she did some act or used some words
which provoked the attack on her, such act or words were reasonably calculated
to provoke the attack, and the act was done or the words were used for the
purpose and with the intent that appellant would have a pretext for inflicting
harm upon Aaron.  See id. at 513.

         
We conclude that the trial court could have found, beyond a reasonable doubt,
that the doctrine of provocation precluded appellant’s self-defense claim under
Aaron’s version of the facts.  Aaron testified that while she was standing
near a chair in a room away from appellant, appellant’s


voice got closer, and then
she came around the corner and she got about a foot in front of me and she
yelled, bitch.  And she yelled more things, but I didn’t want a 
confrontation and I didn’t have any interest in what she had to say to me so I
was screaming over her, get out, get out, get out, and I just kept repeating
myself.

According
to Aaron, appellant then grabbed Aaron’s left arm with “force.”  Only then
did Aaron respond by grabbing appellant’s hair.  The trial court could
have rationally found from these facts that appellant used words and acts that
provoked Aaron’s attack on her.  See id. at 514 (“[I]f a rational jury
could find beyond a reasonable doubt that some act or words of the defendant
actually caused the attack on him, then this part of the inquiry is
satisfied.”).  Further, the trial court could have rationally found that
appellant’s words and acts (approaching Aaron, calling her a “bitch” and
yelling “more things,” and grabbing her arm with “force”) were reasonably
calculated to provoke Aaron’s attack.  See id. at 517 (“An act is reasonably calculated
to cause an attack if it is reasonably capable of causing an attack, or if it
has a reasonable tendency to cause an attack.”).  Finally, the trial court
could have rationally found that appellant’s words and acts were done with the
intent that she would have a pretext for assaulting Aaron.  The trial
court could have inferred this intent from (1) appellant’s calling Aaron a
“bitch” and grabbing her arm, therefore initiating the physical contact;
(2) appellant’s text message that she was going to “beat [Aaron’s] ass”;
and (3) the severity of appellant’s attack and of Aaron’s injuries after
Aaron pulled appellant’s hair.  See id. at 518 (explaining that a
defendant’s acts prior to and after the provocation are relevant to the
defendant’s intent at the time of the provocation and stating that some
“provoking acts may be of such a character as to carry the inference of intent
with them”).  The issue of appellant’s intent may be best answered with a
question:  if appellant did not intend to provoke Aaron’s attack by
calling Aaron a “bitch” and grabbing Aaron with force, what was the intent?

         
In sum, viewing the evidence in the light most favorable to the prosecution,
because the trial court could have rationally found beyond a reasonable doubt
that appellant provoked Aaron’s use of lawful or unlawful force, it could have
also determined that appellant’s use of force was not justified.  See Tex.
Penal Code Ann. § 9.31(b)(4); Smith, 965 S.W.2d at 513–20; Matthews v. State, 708 S.W.2d 835, 838 (Tex. Crim. App. 1986); Kennedy v. State,
193 S.W.3d 645, 655 (Tex. App.—Fort Worth 2006, pet.
ref’d) (en banc) (op. on reh’g).

         
  Appellant also argues that the evidence is insufficient to disprove her
self-defense claim because she produced a version of the events that differs
from Aaron’s.  Contrary to the facts described above, appellant testified
that after she went to Sansom’s mother’s house on the
morning of the fight, Sansom asked if appellant could
bring the girls back later, and when appellant declined to do so, Sansom became upset.  Appellant said that she then
approached Aaron only to inform her that her treatment of appellant’s kids was
unfair,[6]
at which time Aaron got in her face and told her that she was “white
trash.”  According to appellant, after appellant loudly called Aaron a
“bitch,” Aaron hit appellant on the side of her head.  Thus, according to
appellant, the fight that then resulted between appellant, Aaron, and Sansom was caused by Aaron’s aggression rather than
appellant’s aggression.[7]

         
Appellant also denied sending threatening text messages.  But appellant
admitted that after Aaron had changed her cell phone number, appellant found
Aaron’s new number on Sansom’s cell phone bill and
sent Aaron a message stating that Aaron was manipulative and selfish. 
Appellant testified that she regretted not calling the police after the fight
but that she had feared that Sansom’s mother would
lose her job with the federal government if the police had been called. 
Appellant said that as a result of the fight, she had migraines and damage to
ligaments, muscles, and tendons, which required her to receive injections and
participate in physical therapy.  Appellant presented pictures of injuries
she sustained from the fight.

Clearly,
the trial court heard competing versions of the facts concerning appellant’s
fight with Aaron.  Aaron and appellant portrayed the other as the
aggressor and themselves as the victim who turned to self-defense as a reaction
to the other person’s assault.  Thus, the trial court was compelled to
evaluate the credibility of appellant’s self-defense testimony.  See Dotson v. State, 146 S.W.3d
285, 295 (Tex. App.—Fort Worth 2004, pet. ref’d).  By its conviction,
the court resolved the credibility issue against appellant and in favor of
Aaron, and we must defer to the court’s determination of the weight to be given
to contradictory testimony.  Saxton, 804 S.W.2d at 914; Dotson, 146 S.W.3d at 295.  Like we said in Smith,

         
This case is similar to Denman v. State, 193 S.W.3d
129 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  There, a jury found
Denman guilty of aggravated assault, and Denman argued on appeal that the evidence
was legally insufficient to support the conviction.  Denman testified at
trial that he had “kicked [the] complainant in the head in self-defense after a
struggle that began when she poked his foot with a knife and pointed a loaded
shot-gun at him.”  Denman also called six witnesses who testified that the
complainant had assaulted or threatened him with weapons in the past.  The
complainant did not testify at the trial because she was in a persistent
vegetative state.  Holding that the evidence was legally sufficient to
support the conviction, the court pointed to the jury’s entitlement to “choose
to believe all, some, or none of the testimony presented by the parties” and
noted that “a defendant's own statement regarding his intent is not enough to render
the evidence, without more, insufficient.”  The court also stated,
“Because the jury, by finding [Denman] guilty, implicitly rejected his
self-defense theory, it necessarily chose not to believe the testimony
concerning such.”

2011
WL 2436774, at *6 (some citations omitted).

         
Accordingly, like in Smith, a rational trier of fact could have found
beyond a reasonable doubt that appellant was guilty of assault “by choosing to
believe the evidence favoring conviction and by choosing to disbelieve the
evidence favoring self-defense.”  Id.; see Spearman v. State,
307 S.W.3d 463, 469 (Tex. App.—Beaumont 2010, pet.
ref’d) (affirming the jury’s rejection of the defendant’s self-defense theory
because the jury could “reasonably reject some or all of the defendant’s
testimony, and accept the testimony of those witnesses called by the State”).

         
For all of these reasons, we overrule appellant’s first issue.

The
Propriety of the Trial Court’s Restitution Order

         
In appellant’s second issue, she argues that the evidence is insufficient to
support the trial court’s restitution order because the case “revolves around a
contested set of facts” and the court “failed to draw reasonable
conclusions.”  We review restitution orders for an abuse of discretion.
 Sanders v. State, 346 S.W.3d
26, 35 (Tex. App.—Fort Worth 2011, pet. ref’d); Burris v. State, 172 S.W.3d 75, 77 (Tex. App.—Fort Worth 2005, no
pet.).  “An abuse of discretion occurs if the trial court acts
without reference to any guiding rules or principles or acts arbitrarily or
unreasonably.”  Sanders, 346 S.W.3d
at 35.  The amount of restitution must be just and be
supported factually.  Burris, 172 S.W.3d at 77.  Next, the restitution must be
for the offense for which the defendant is criminally liable.  Id.
at 77–78.  Finally, the restitution must be proper only for the victim of
the offense.  Id. at 78.

         
Appellant contends that the evidence is insufficient to prove that she was
“responsible for [Aaron’s] dislocated shoulder.”  Thus, she does not
contend that the amount of restitution or person to whom the restitution was
ordered were improper.  Aaron testified that when appellant grabbed her
hair, she was “all the sudden on [her] back.”  Aaron said that appellant’s
weight came down on Aaron’s left arm, which caused Aaron pain.  Aaron then
testified that she was not able to use her left arm to defend herself because
she “couldn’t move it.”  After Sansom separated
appellant from Aaron, Aaron noticed that her “left arm was stuck out to the side
[at] about a 90 degree angle.  [She] had tried to put it down and it
wouldn’t move.”  Later, Sansom noticed that
Aaron’s arm “definitely looked like it wasn’t in the right place.  In fact, . . . her left shoulder was lower than it should have
been by two inches.”  The trial court admitted medical records
establishing Aaron’s January 2010 surgery and subsequent physical therapy on
her left shoulder.

         
Based on this evidence, we conclude that the trial court did not abuse its
discretion by ordering restitution on the basis that appellant’s crime caused
the injury to appellant’s left arm.  See Sanders, 346 S.W.3d at 35; see also Garcia v. State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001) (noting that the factfinder may draw reasonable inferences from the
evidence).  We overrule appellant’s second issue.[8]

Alleged Violations of
Evidentiary Rules

 

         
In her third issue, appellant argues that reversible error was caused by the
State’s asking “a series of leading questions and questions which called for
speculation.”  But appellant acknowledges that she did not object to these
questions or to the testimony that resulted from them.

         
To preserve a complaint for our review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Layton v.
State, 280 S.W.3d 235, 238–39 (Tex. Crim. App.
2009); see also Tex. R. Evid.
103(a)(1) (stating that error may not be predicated upon a ruling which
admits or excludes evidence unless a substantial right of the party is affected
and a timely objection or motion to strike appears of record, stating the
specific ground of the objection).  Further, the trial court must have
ruled on the request, objection, or motion, either expressly or implicitly, or
the complaining party must have objected to the trial court’s refusal to
rule.  Tex. R. App. P. 33.1(a)(2); Mendez v.
State, 138 S.W.3d 334, 341 (Tex. Crim. App.
2004).  A reviewing court should not address the merits of an issue
that has not been preserved for appeal.  Ford v. State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).  “Except for
complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other
complaints, whether constitutional, statutory, or otherwise, are forfeited by failure
to comply with Rule 33.1(a).”  Mendez, 138 S.W.3d at 342.

         
Appellant has not presented authority establishing that the introduction of
speculative testimony or evidence that results from leading questions affects a
systemic requirement or violates a waivable-only
right.  The court of criminal appeals has consistently held that
evidentiary complaints are forfeited for lack of a timely objection, even when
those complaints concern the defendant’s constitutional rights.  See Saldano v. State, 70 S.W.3d
873, 889–90 (Tex. Crim. App. 2002); see also Lucio
v. State, No. AP-76,020, 2011 WL 4347044, at *28
(Tex. Crim. App. Sept. 14, 2011) (holding that by failing to object on
constitutional grounds, a defendant forfeited her claim that the admission of
evidence violated her Sixth Amendment right to confront witnesses); Lopez v.
State, 482 S.W.2d 179, 182 (Tex. Crim. App. 1972)
(“[T]here must be a timely objection to preserve error of illegally obtained
evidence.”).  And various courts have applied this rule to complaints
about leading questions and the speculative nature of testimony.  See
Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim.
App.), cert. denied, 516 U.S. 832 (1995); Stevens v. State, 671 S.W.2d 517, 521 (Tex. Crim. App. 1984); Wise v. State,
223 S.W.3d 548, 558 (Tex. App.—Amarillo 2007, pet.
ref’d).

         
Appellant argues that her evidentiary contentions are cumulative and
fundamental and may be reviewed under the authority of Texas Rule of Evidence
103(d).  See Tex. R. Evid. 103(d) (“In a criminal case, nothing in these rules
precludes taking notice of fundamental errors affecting substantial rights
although they were not brought to the attention of the court.”).  But rule
103(d) has been applied frugally and only when the admission of evidence
renders the defendant’s trial fundamentally unfair.  Smith
v. State, 961 S.W.2d 501, 505–06 (Tex. App.—San
Antonio 1997, no pet.).  Appellant does not cite authority that
classifies complaints about the speculative nature of evidence or the leading
quality of questions as fundamental under rule 103(d), and we have found
none.  Cf. Garner v. State, 939 S.W.2d
802, 807 (Tex. App.—Fort Worth 1997, pet. ref’d) (holding that error was not
preserved concerning a stream of leading questions and rejecting the
defendant’s argument that the trial court’s failure to declare a mistrial sua sponte because of leading
questions was fundamental error); Demmings
v. State, No. 05-94-00663-CR, 1996 WL 403999, at *2 (Tex. App.—Dallas July
18, 1996, no pet.) (not designated for publication) (holding that a prosecutor’s asking questions that called
for speculation did not comprise fundamental error); see also Moore v.
State, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996)
(holding that the admission of hearsay is not fundamental error that may be
raised for the first time on appeal), cert. denied, 520 U.S. 1219
(1997).

         
Because appellant forfeited her complaint under rule of appellate procedure
33.1(a) and because we conclude that the evidentiary complaints made by
appellant are not fundamental under rule of evidence 103(d), we overrule her
third issue.

Conclusion

         
Having overruled appellant’s issues, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November
23, 2011



 









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). 





[3]The
facts recited in this section comprise the collective testimony of the State’s
witnesses.  Appellant provided countervailing facts through her testimony,
and we will discuss those facts below in our discussion of appellant’s first
issue.





[4]Sansom testified that appellant and Aaron each threw
punches.  Aaron testified that she did not punch appellant in the face.





[5]In
the title of her first issue, appellant purports to raise legal and factual
insufficiency.  As explained below, the State bears the burden to disprove
self-defense beyond a reasonable doubt.  The legal sufficiency standard
“is the only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt.”  Brooks
v. State, 323 S.W.3d 893, 895 (Tex. Crim. App.
2010); see Smith v. State, No. 01-09-00634-CR, 2011 WL 1233367, at *4
(Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref’d) (applying legal sufficiency principles to a
defendant’s post-Brooks challenge to a jury’s rejection of the
defendant’s self-defense claim).





[6]According
to appellant, Sansom wanted to maintain contact with
her daughters, but Aaron was not comfortable with his relationship with them,
and Sansom had therefore planned to end his
relationship with Aaron on the weekend that the fight occurred.





[7]Appellant
admitted grabbing Aaron’s hair and punching Aaron in the face several times,
and appellant conceded that Aaron fell on the floor and dislocated her
shoulder.





[8]To
the extent that appellant challenges the trial court’s restitution order based
on a contention that the evidence is insufficient to disprove that she acted in
self-defense rather than as the aggressor, we refer to the analysis on
appellant’s first issue.