

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00010-CR**

CHRISTIE OSBORNE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Christie Osborne appeals her conviction for assault causing bodily injury,[2] contending in three points that the evidence is insufficient to disprove her self-defense claim, that the evidence is insufficient to support the trial court's restitution order, and that numerous alleged violations of evidence

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(a)(1) (West 2011).

rules, which appellant did not raise at trial, cumulatively prejudiced her defense. We affirm.

## Background Facts[3]

Appellant and Joey Sansom dated each other for several years. More than a year after appellant and Sansom broke up, Sansom began dating Kristina Aaron. Appellant and Sansom, however, remained close because of Sansom's interactions with appellant's daughters, whom Sansom had helped raise. In 2008, according to Aaron, appellant sent her a scolding text message stating that Aaron was selfish and manipulative. Aaron testified that appellant also sent Sansom a text message stating that she was going to "beat [Aaron's] ass." According to Aaron, appellant was upset because Sansom began refusing to see appellant's daughters.

In December 2009, appellant and her daughters went to Sansom's mother's house, where Sansom was staying. Sansom was planning to spend time with the girls that day, but he had expected appellant to arrive later in the afternoon instead of about 11:30 in the morning. While Aaron watched the children play a computer game, appellant became agitated; according to Aaron, appellant was "mad that [Aaron] was coming between the girls and [Sansom]." Sansom told appellant to leave, but appellant moved closer to Aaron, called her a

---

[3]The facts recited in this section comprise the collective testimony of the State's witnesses. Appellant provided countervailing facts through her testimony, and we will discuss those facts below in our discussion of appellant's first issue.

"bitch," and grabbed her left arm, which did not cause Aaron pain but "felt, like, a force." Aaron then grabbed appellant's hair; Aaron says that she did so in self-defense. Appellant, who is larger than Aaron, reciprocated by grabbing Aaron's hair, pulling her to the ground on a hard floor (which hurt Aaron's left shoulder), and hitting her in the face with a closed fist several times.[4] Sansom eventually separated appellant and Aaron, and appellant said, "She started it."

Sansom and Aaron asserted that appellant was the aggressor in the fight. When asked at trial to describe what appellant did physically to Aaron, Sansom said,

> Mainly just grab her by the hair and swing with her fist and try and hit her in the head, about the shoulders, that kind of stuff. A whole lot of hair pulling. I mean, they basically held on, you know, each party. And I tried to come in and break it up physically, you know, put my arms between the two of them and pry them apart. And I walked around and tried to pull [appellant] off of [Aaron] and I guess that wasn't working too well, I just couldn't pull both of them at the same time. I went back to trying to split them apart. At that time all three of us fell to the ground and [appellant] was kind of in a kneeling position over the top of [Aaron] so I kept trying to pry them apart, get them apart and use some physical activity to get them apart.

Aaron called the police. An ambulance arrived and took Aaron to the hospital, where medical personnel diagnosed her with a dislocated shoulder. Aaron's injury required her to have surgery and to attend physical therapy for approximately six months.

---

[4]Sansom testified that appellant and Aaron each threw punches. Aaron testified that she did not punch appellant in the face.

3

Appellant eventually turned herself in to the police and stated that she had been assaulted first. The State charged appellant with assault. Appellant pled not guilty and waived her right to a jury trial. After hearing testimony from four witnesses, the trial court found appellant guilty. The court sentenced appellant to ninety days' confinement, suspended that sentence, placed her on community supervision, and ordered her to pay restitution for Aaron's medical expenses. Appellant filed notice of this appeal.

### Sufficiency of the Evidence to Disprove Appellant's Defense

In her first issue, appellant argues that the evidence is insufficient to disprove her self-defense claim.[5] First, appellant contends that Aaron's testimony and version of the altercation supports, rather than precludes, appellant's self-defense theory because Aaron testified that appellant had only grabbed her left arm, and had not caused pain, when Aaron grabbed appellant's hair. Appellant seems to contend, therefore, that her response to having her hair pulled under Aaron's version of the facts (pulling Aaron's hair, forcing Aaron to

---

[5]In the title of her first issue, appellant purports to raise legal and factual insufficiency. As explained below, the State bears the burden to disprove self-defense beyond a reasonable doubt. The legal sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Smith v. State*, No. 01-09-00634-CR, 2011 WL 1233367, at *4 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (applying legal sufficiency principles to a defendant's post-*Brooks* challenge to a jury's rejection of the defendant's self-defense claim).

the ground, and hitting Aaron in the face several times with a closed fist) was justified as self-defense.

A person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). It is well established, however, that a person is justified in using force against another when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. *Clifton v. State*, 21 S.W.3d 906, 907 (Tex. App.—Fort Worth 2000, pet. ref'd); *see* Tex. Penal Code Ann. § 9.31(a) (West 2011).

After the defendant introduces some evidence supporting a self-defense theory, the State bears the burden of persuasion to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (explaining that a conviction produces an implicit finding against the defensive theory); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991); *Smith v. State*, No. 02-09-00394-CR, 2011 WL 2436774, at *5 (Tex. App.—Fort Worth June 16, 2011, no pet.). This burden does not require the State to introduce evidence disproving the defense; rather, it requires the State to prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913; *Smith*, 2011 WL 2436774, at *5. To determine the sufficiency of the evidence to disprove self-defense, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also

5

could have found against the appellant on the self-defense issue beyond a reasonable doubt." *Smith*, 2011 WL 2436774, at *5 (citing *Saxton*, 804 S.W.2d at 914). We must resolve any conflicting inferences in favor of the prosecution. *Id.* at *4. We are not permitted to re-evaluate the trial court's resolution of the weight and credibility of the witnesses. *See id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

Appellant's first argument about self-defense hinges on her contention that under Aaron's version of the facts, Aaron's pulling appellant's hair was the first unlawful force, and that, therefore, appellant's pulling Aaron's hair and punching appellant was justifiable self-defense. But even if we were to assume that Aaron's pulling appellant's hair in response to appellant's grabbing Aaron's arm was unlawful, the penal code provides that the use of force against another is not justified if "the actor provoked the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(b)(4). As the court of criminal appeals explained in *Smith v. State*,

> Provoking the difficulty, as the doctrine of provocation is commonly referred to in our jurisprudence, is a concept in criminal law which acts as a limitation or total bar on a defendant's right to self-defense. The phrase "provoking the difficulty" is a legal term of art, and more accurately translates in modern usage to "provoked the attack." The rule of law is that if the defendant provoked another to make an attack on him, . . . the defendant forfeits his right of self-defense.

965 S.W.2d 509, 512 (Tex. Crim. App. 1998). In other words, one cannot "willingly and knowingly bring upon himself the very necessity which he sets up

6

for his own defense." *Id.* at 513–14. The doctrine of provocation, codified by section 9.31(b)(4), eliminates appellant's alleged justification of self-defense if she did some act or used some words which provoked the attack on her, such act or words were reasonably calculated to provoke the attack, and the act was done or the words were used for the purpose and with the intent that appellant would have a pretext for inflicting harm upon Aaron. *See id.* at 513.

We conclude that the trial court could have found, beyond a reasonable doubt, that the doctrine of provocation precluded appellant's self-defense claim under Aaron's version of the facts. Aaron testified that while she was standing near a chair in a room away from appellant, appellant's

> voice got closer, and then she came around the corner and she got about a foot in front of me and she yelled, bitch. And she yelled more things, but I didn't want a confrontation and I didn't have any interest in what she had to say to me so I was screaming over her, get out, get out, get out, and I just kept repeating myself.

According to Aaron, appellant then grabbed Aaron's left arm with "force." Only then did Aaron respond by grabbing appellant's hair. The trial court could have rationally found from these facts that appellant used words and acts that provoked Aaron's attack on her. *See id.* at 514 ("[I]f a rational jury could find beyond a reasonable doubt that some act or words of the defendant actually caused the attack on him, then this part of the inquiry is satisfied."). Further, the trial court could have rationally found that appellant's words and acts (approaching Aaron, calling her a "bitch" and yelling "more things," and grabbing her arm with "force") were reasonably calculated to provoke Aaron's attack.

7

*See id.* at 517 ("An act is reasonably calculated to cause an attack if it is reasonably capable of causing an attack, or if it has a reasonable tendency to cause an attack."). Finally, the trial court could have rationally found that appellant's words and acts were done with the intent that she would have a pretext for assaulting Aaron. The trial court could have inferred this intent from (1) appellant's calling Aaron a "bitch" and grabbing her arm, therefore initiating the physical contact; (2) appellant's text message that she was going to "beat [Aaron's] ass"; and (3) the severity of appellant's attack and of Aaron's injuries after Aaron pulled appellant's hair. *See id.* at 518 (explaining that a defendant's acts prior to and after the provocation are relevant to the defendant's intent at the time of the provocation and stating that some "provoking acts may be of such a character as to carry the inference of intent with them"). The issue of appellant's intent may be best answered with a question: if appellant did not intend to provoke Aaron's attack by calling Aaron a "bitch" and grabbing Aaron with force, what was the intent?

In sum, viewing the evidence in the light most favorable to the prosecution, because the trial court could have rationally found beyond a reasonable doubt that appellant provoked Aaron's use of lawful or unlawful force, it could have also determined that appellant's use of force was not justified. *See* Tex. Penal Code Ann. § 9.31(b)(4); *Smith*, 965 S.W.2d at 513–20; *Matthews v. State*, 708 S.W.2d 835, 838 (Tex. Crim. App. 1986); *Kennedy v. State*, 193 S.W.3d 645, 655 (Tex. App.—Fort Worth 2006, pet. ref'd) (en banc) (op. on reh'g).

8

Appellant also argues that the evidence is insufficient to disprove her self-defense claim because she produced a version of the events that differs from Aaron's. Contrary to the facts described above, appellant testified that after she went to Sansom's mother's house on the morning of the fight, Sansom asked if appellant could bring the girls back later, and when appellant declined to do so, Sansom became upset. Appellant said that she then approached Aaron only to inform her that her treatment of appellant's kids was unfair,[6] at which time Aaron got in her face and told her that she was "white trash." According to appellant, after appellant loudly called Aaron a "bitch," Aaron hit appellant on the side of her head. Thus, according to appellant, the fight that then resulted between appellant, Aaron, and Sansom was caused by Aaron's aggression rather than appellant's aggression.[7]

Appellant also denied sending threatening text messages. But appellant admitted that after Aaron had changed her cell phone number, appellant found Aaron's new number on Sansom's cell phone bill and sent Aaron a message stating that Aaron was manipulative and selfish. Appellant testified that she regretted not calling the police after the fight but that she had feared that

---

[6]According to appellant, Sansom wanted to maintain contact with her daughters, but Aaron was not comfortable with his relationship with them, and Sansom had therefore planned to end his relationship with Aaron on the weekend that the fight occurred.

[7]Appellant admitted grabbing Aaron's hair and punching Aaron in the face several times, and appellant conceded that Aaron fell on the floor and dislocated her shoulder.

9

Sansom's mother would lose her job with the federal government if the police had been called. Appellant said that as a result of the fight, she had migraines and damage to ligaments, muscles, and tendons, which required her to receive injections and participate in physical therapy. Appellant presented pictures of injuries she sustained from the fight.

Clearly, the trial court heard competing versions of the facts concerning appellant's fight with Aaron. Aaron and appellant portrayed the other as the aggressor and themselves as the victim who turned to self-defense as a reaction to the other person's assault. Thus, the trial court was compelled to evaluate the credibility of appellant's self-defense testimony. *See Dotson v. State*, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref'd). By its conviction, the court resolved the credibility issue against appellant and in favor of Aaron, and we must defer to the court's determination of the weight to be given to contradictory testimony. *Saxton,* 804 S.W.2d at 914; *Dotson*, 146 S.W.3d at 295. Like we said in *Smith*,

> This case is similar to *Denman v. State*, 193 S.W.3d 129 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). There, a jury found Denman guilty of aggravated assault, and Denman argued on appeal that the evidence was legally insufficient to support the conviction. Denman testified at trial that he had "kicked [the] complainant in the head in self-defense after a struggle that began when she poked his foot with a knife and pointed a loaded shot-gun at him." Denman also called six witnesses who testified that the complainant had assaulted or threatened him with weapons in the past. The complainant did not testify at the trial because she was in a persistent vegetative state. Holding that the evidence was legally sufficient to support the conviction, the court pointed to the jury's entitlement to "choose to believe all, some, or none of the testimony

10

presented by the parties" and noted that "a defendant's own statement regarding his intent is not enough to render the evidence, without more, insufficient." The court also stated, "Because the jury, by finding [Denman] guilty, implicitly rejected his self-defense theory, it necessarily chose not to believe the testimony concerning such."

2011 WL 2436774, at *6 (some citations omitted).

Accordingly, like in *Smith*, a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of assault "by choosing to believe the evidence favoring conviction and by choosing to disbelieve the evidence favoring self-defense." *Id.*; *see Spearman v. State*, 307 S.W.3d 463, 469 (Tex. App.—Beaumont 2010, pet. ref'd) (affirming the jury's rejection of the defendant's self-defense theory because the jury could "reasonably reject some or all of the defendant's testimony, and accept the testimony of those witnesses called by the State").

For all of these reasons, we overrule appellant's first issue.

**The Propriety of the Trial Court's Restitution Order**

In appellant's second issue, she argues that the evidence is insufficient to support the trial court's restitution order because the case "revolves around a contested set of facts" and the court "failed to draw reasonable conclusions." We review restitution orders for an abuse of discretion. *Sanders v. State*, 346 S.W.3d 26, 35 (Tex. App.—Fort Worth 2011, pet. ref'd); *Burris v. State*, 172 S.W.3d 75, 77 (Tex. App.—Fort Worth 2005, no pet.). "An abuse of discretion occurs if the trial court acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably." *Sanders*, 346 S.W.3d at 35. The amount of

11

restitution must be just and be supported factually. *Burris*, 172 S.W.3d at 77. Next, the restitution must be for the offense for which the defendant is criminally liable. *Id.* at 77–78. Finally, the restitution must be proper only for the victim of the offense. *Id.* at 78.

Appellant contends that the evidence is insufficient to prove that she was "responsible for [Aaron's] dislocated shoulder." Thus, she does not contend that the amount of restitution or person to whom the restitution was ordered were improper. Aaron testified that when appellant grabbed her hair, she was "all the sudden on [her] back." Aaron said that appellant's weight came down on Aaron's left arm, which caused Aaron pain. Aaron then testified that she was not able to use her left arm to defend herself because she "couldn't move it." After Sansom separated appellant from Aaron, Aaron noticed that her "left arm was stuck out to the side [at] about a 90 degree angle. [She] had tried to put it down and it wouldn't move." Later, Sansom noticed that Aaron's arm "definitely looked like it wasn't in the right place. In fact, . . . her left shoulder was lower than it should have been by two inches." The trial court admitted medical records establishing Aaron's January 2010 surgery and subsequent physical therapy on her left shoulder.

Based on this evidence, we conclude that the trial court did not abuse its discretion by ordering restitution on the basis that appellant's crime caused the injury to appellant's left arm. *See Sanders*, 346 S.W.3d at 35; *see also Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001) (noting that the factfinder may

draw reasonable inferences from the evidence).  We overrule appellant's second issue.[8]

## Alleged Violations of Evidentiary Rules

In her third issue, appellant argues that reversible error was caused by the State's asking "a series of leading questions and questions which called for speculation."  But appellant acknowledges that she did not object to these questions or to the testimony that resulted from them.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009); *see also* Tex. R. Evid. 103(a)(1) (stating that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears of record, stating the specific ground of the objection).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address the

---

[8]To the extent that appellant challenges the trial court's restitution order based on a contention that the evidence is insufficient to disprove that she acted in self-defense rather than as the aggressor, we refer to the analysis on appellant's first issue.

13

merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez*, 138 S.W.3d at 342.

Appellant has not presented authority establishing that the introduction of speculative testimony or evidence that results from leading questions affects a systemic requirement or violates a waivable-only right. The court of criminal appeals has consistently held that evidentiary complaints are forfeited for lack of a timely objection, even when those complaints concern the defendant's constitutional rights. *See Saldano v. State*, 70 S.W.3d 873, 889–90 (Tex. Crim. App. 2002); *see also Lucio v. State*, No. AP-76,020, 2011 WL 4347044, at *28 (Tex. Crim. App. Sept. 14, 2011) (holding that by failing to object on constitutional grounds, a defendant forfeited her claim that the admission of evidence violated her Sixth Amendment right to confront witnesses); *Lopez v. State*, 482 S.W.2d 179, 182 (Tex. Crim. App. 1972) ("[T]here must be a timely objection to preserve error of illegally obtained evidence."). And various courts have applied this rule to complaints about leading questions and the speculative nature of testimony. *See Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995); *Stevens v. State*, 671 S.W.2d 517, 521 (Tex. Crim. App. 1984); *Wise v. State*, 223 S.W.3d 548, 558 (Tex. App.—Amarillo 2007, pet. ref'd).

14

Appellant argues that her evidentiary contentions are cumulative and fundamental and may be reviewed under the authority of Texas Rule of Evidence 103(d). *See* Tex. R. Evid. 103(d) ("In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court."). But rule 103(d) has been applied frugally and only when the admission of evidence renders the defendant's trial fundamentally unfair. *Smith v. State*, 961 S.W.2d 501, 505–06 (Tex. App.—San Antonio 1997, no pet.). Appellant does not cite authority that classifies complaints about the speculative nature of evidence or the leading quality of questions as fundamental under rule 103(d), and we have found none. *Cf. Garner v. State*, 939 S.W.2d 802, 807 (Tex. App.—Fort Worth 1997, pet. ref'd) (holding that error was not preserved concerning a stream of leading questions and rejecting the defendant's argument that the trial court's failure to declare a mistrial sua sponte because of leading questions was fundamental error); *Demmings v. State*, No. 05-94-00663-CR, 1996 WL 403999, at *2 (Tex. App.—Dallas July 18, 1996, no pet.) (not designated for publication) (holding that a prosecutor's asking questions that called for speculation did not comprise fundamental error); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (holding that the admission of hearsay is not fundamental error that may be raised for the first time on appeal), *cert. denied*, 520 U.S. 1219 (1997).

Because appellant forfeited her complaint under rule of appellate procedure 33.1(a) and because we conclude that the evidentiary complaints

15

made by appellant are not fundamental under rule of evidence 103(d), we overrule her third issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

                                         TERRIE LIVINGSTON
                                         CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 23, 2011