

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00221-CR

THOYS DEWAYNE SANDERS                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

## FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

A jury convicted appellant Thoys Dewayne Sanders of assault. The trial court assessed punishment at 270 days' confinement and probated that sentence for two years, placing Sanders on community supervision. The court also required Sanders to pay $21,541 in restitution. In three issues, Sanders contends that the evidence is insufficient to prove he assaulted the alleged victim, that the trial court abused its discretion by assessing the restitution

amount, and that he received ineffective assistance of counsel at trial.  We will affirm.

## II. Background

Leah Williams, who lived with her mother and Sanders, her stepfather, entertained friends on the night of Saturday, April 21, 2007.  Sara Grauerholz, Amanda Sessions, Jeremiah Langen, and Justin Henninge, the alleged victim in this case, were Williams's guests.  Williams and her friends smoked marijuana and drank alcohol that evening.  They eventually fell asleep in different rooms of the residence's garage apartment.

Early the next morning, Williams's mother woke her up and told her that Sanders was angry and that she and her friends needed to leave.  Williams's mother was also upset because someone's car was blocking her car in the driveway.  The layout of the garage apartment requires one to walk down the stairs and exit through the garage, where Sanders kept his cabinet-making workshop.  As Williams and her friends began to leave, Williams and Grauerholz walked outside as Sanders quickly passed them and entered the garage.  At that moment, Sanders encountered Henninge.  That encounter led to assault charges against Sanders.

### A.    Justin Henninge

According to Henninge, he was woken when Williams's mother confronted Williams that morning.  He said that Williams's mother said, "Wake up.  Wake up.

2

[Sanders] is angry. [Sanders] is mad. You have to leave." Henninge testified that he, Grauerholz, and Williams walked down the stairs of the garage apartment, attempting to exit the garage. By Henninge's account, as soon as Grauerholz and Williams left the garage, Sanders came into the garage and, using his arm, "pinned [Henninge] against the wall." Henninge said, "from then I woke up to [Grauerholz] yelling." Henninge said that because he was knocked unconscious by Sanders, he did not really remember much of anything from the encounter other than Grauerholz yelling "You hit my boyfriend." Henninge and the prosecutor re-enacted Henninge's account of the encounter with Sanders for the jury. Henninge said that despite having smoked marijuana the night before, he was sober when these events happened. At some point, police and EMT arrived on the scene and Henninge was taken to the hospital. Henninge did not remember talking with a police officer and did not remember riding to the hospital, but he did remember being placed on a stretcher.

The next thing Henninge vividly remembered was getting an MRI at the hospital. Henninge said Sanders's actions left a huge bruise on one side of his face, another on the back of his head, and another on the opposite side of his face. The State introduced pictures of these injuries, and Henninge testified that they were accurate depictions of the injuries he had sustained from his encounter with Sanders. Henninge also averred that Sanders had caused him to have a black eye, multiple facial rashes and abrasions, and internal bleeding of the

3

brain. Henninge testified that the hospital performed multiple scans, including MRIs and X-rays.

**B.    Sara Grauerholz**

Much like Henninge's account, Grauerholz testified that she, Henninge, and a few others stayed with Williams that night. As the morning approached, Williams's mother woke them all, mildly irritated that Grauerholz's vehicle was blocking hers. According to Grauerholz, Williams's mother informed them that Sanders was upset. Grauerholz recounted the noise she heard when she left the garage and was outside, "[W]e heard a noise against a garage door . . . . A slam or something hitting a garage door." Grauerholz said she immediately turned toward the garage and saw Henninge lying on the floor not moving. She said that Sanders was standing over Henninge. She and Williams attempted to carry Henninge to her car, but Williams's mother came out, told them to stay, and informed them that 9-1-1 had been called. Grauerholz also testified that she believed Henninge was sober that morning. She said that she asked Sanders why he had hit her boyfriend and that Sanders simply went upstairs without responding. Sanders also did not assist Henninge despite Henninge's injuries.

**C.    Jason Bowman**

Jason Bowman, an EMT basic paramedic, responded to the request for medical assistance that morning. Bowman said that when he arrived and encountered Henninge, Henninge appeared confused. Bowman averred, given

4

his experience as an EMT paramedic, that Henninge did not appear high on drugs or alcohol. He also said that Henninge was injured. Based on his training and experience, Bowman believed that Henninge's injuries appeared to be the result of an assault. Bowman testified that he initially diagnosed Henninge with a concussion. He said that Henninge also had facial tenderness, swelling, lacerations to the face, and a nosebleed. Bowman said that Henninge's injures were severe and the result of a "severe blunt force." He also testified that Henninge had no injuries to the back of his head and that Henninge's injuries were consistent with a frontal blow.

**D.    Leah Williams**

Leah Williams testified. Williams's account of the morning in question tracked the testimony of Henninge and Grauerholz. That is, Williams also said that she, Grauerholz, and Henninge were leaving because her mother woke them up and asked them to leave. She testified that her mother was angry. Williams also said that she heard what she believed to be Henninge hitting the garage door. She said that the garage door "rattled quite a bit" from whatever impacted it.

**E.    Medical Records and Verdict**

The State admitted into evidence a set of medical records, with an accompanying affidavit, regarding Henninge's admittance into the hospital on the morning of April 22, 2007. The records contain detailed medical information

5

pertaining to Henninge's obligations to pay for medical treatment of injuries he sustained.

The jury found Sanders guilty. Sanders elected to have the trial court assess punishment. At the punishment hearing, Henninge's mother testified that despite Henninge having some insurance coverage, his insurance carrier would not pay most of his medical bills and that her family has not been able to pay for Henninge's medical bills. She also said that the bills were delinquent at the time of trial. The State again introduced medical billing documents showing that Henninge's unpaid medical costs related to injuries he sustained on April 22, 2007, totaled $21,541. The trial court assessed punishment at 270 days' in jail but probated Sanders's sentence for two years. The court also ordered Sanders to pay restitution in the amount of $21,541. This appeal followed.

### III. DISCUSSION

#### A. Sufficiency of the Evidence

In his first point, Sanders contends that the trial court abused its discretion by denying his motion for instructed verdict. Sanders's first point contains two distinct subparts. First, it seems that Sanders argues that there exists a variance between the charging instrument and the proof presented at trial to show that he assaulted Henninge. Second, Sanders challenges the evidentiary sufficiency to support his conviction.

### 1.    No Material Variance

In part of his first point, Sanders argues that the evidence does not support that Henninge's injuries were a result of him having struck a wall; rather, the evidence "indicates that the injuries sustained by [Henninge] were the result of Henninge's fall to the floor."    Sanders appears to argue that because the charging instrument—in this case by information—alleged that Sanders "intentionally or knowingly cause[d] bodily injury to [Henninge], by striking him . . . thereby causing him to strike or slam into a wall" and because the evidence at trial showed that Henninge's injuries were caused by him hitting the floor, the evidence is insufficient to support Sanders's conviction.    Thus, according to Sanders, the trial court erred by not granting his instructed verdict.

A "variance" occurs when there is a discrepancy between the allegations of the charging instrument and the proof at trial.  *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  In other words, in a variance situation, the State has proved the defendant guilty of a crime, but has proved its commission in a manner that varies from the allegations in the charging instrument.  *Id.*  Only a material variance requires reversal because only a material variance prejudices a defendant's substantial rights.  *Fuller v. State*, 73 S.W.3d 250, 263 (Tex. Crim. App. 2002).  We decide if the variance is material by determining "whether the [charging instrument], as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether

7

prosecution under the deficiently drafted [charging instrument] would subject the defendant to the risk of being prosecuted later for the same crime." *Gollihar*, 46 S.W.3d at 257.

Sanders does not argue that the information was inadequate to inform him of the charge against him sufficiently to allow him to prepare an adequate defense, nor does Sanders argue that prosecution under the information would subject him to the risk of being prosecuted later for the same crime. In fact, Sanders's trial counsel repeatedly attempted to persuade the jury that Sanders's and Henninge's encounter was purely accidental, rather than an assault. Trial counsel also repeatedly demonstrated through extensive questioning of witnesses that Sanders was fully aware of whom he was accused of injuring, and there is no evidence that Sanders was surprised by any proof offered at trial. *See Fuller*, 73 S.W.3d at 253–54 ("There is no indication in the record that appellant did not know whom he was accused of injuring or that he was surprised by the proof at trial."). We hold that Sanders has failed to show a fatal variance between the indictment and the proof at trial, and we overrule this portion of his first point. Thus, we will disregard the alleged variance in determining whether the evidence is sufficient to prove that Sanders assaulted Henninge. *See Hilburn v. State*, 312 S.W.3d 169, 175 (Tex. App.—Fort Worth 2010, no pet.) (disregarding alleged variance and conducting evidentiary sufficiency review when appellant failed to explain on appeal how alleged variance prevented him

8

from preparing a defense or how he could be prosecuted again under same facts).

### 2. The Evidence is Sufficient to Support Sanders's Conviction

In the remainder of his first point, Sanders challenges the sufficiency of the evidence to support his conviction for assaulting Henninge. Sanders claims both that we are to conduct a legal sufficiency review and that we are to remand this case for a new trial; thus, Sanders implicates issues of both legal and factual sufficiency reviews. But the crux of Sanders's point is that "[t]here is no evidence that the injuries sustained by Henninge were the result of [Sanders] causing him to strike a wall" and that there exists a "reasonable hypothesis other than [Sanders's] guilt" that Henninge "fell to the floor accidentally." We conclude that the evidence supports Sanders's conviction.

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895, 902 (Tex. Crim. App. 2010). Accordingly, we review Sanders's claims of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review. *Id.* at 906.

9

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2789, 2789 (1979); *see Brooks*, 323 S.W.3d at 899 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). "[T]he factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of the facts proved and of the weight to be given to the testimony."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.— Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Sanders

10

"intentionally, knowingly, or recklessly cause[d] bodily injury to another." Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2010).

The State is not required to present direct evidence to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Indeed, circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49.

Moreover, it is not incumbent upon the State to exclude "every reasonable hypothesis other than guilt" for the evidence to be considered sufficient. *See Geesa v. State*, 820 S.W.2d 154, 157–61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000); *see also Villarreal Lopez v. State*, 267 S.W.3d 85, 97–98 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Harris v. State*, 133 S.W.3d 760, 763–65 (Tex. App.—Texarkana 2004, pet. ref'd)); *Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.) ("[T]he mere existence of an alternative reasonable hypothesis does not render the evidence . . . insufficient. . . . [E]ven when an appellant identifies an alternative reasonable hypothesis raised by the

11

evidence, the standard of review remains the same."); *Orona v. State*, 836 S.W.2d 319, 322 (Tex. App.—Austin 1992, no pet.)).

In this case, the jury heard testimony that Sanders was angry the morning that Henninge was injured. Multiple witnesses testified that Williams and her friends were woken by Williams's mother, who declared that everyone needed to leave and that Sanders was angry. Grauerholz testified that as she and Williams left the garage, Sanders quickly went into the garage; a loud noise and rattling of the garage door could be heard; and both Williams and Grauerholz said that as they looked to see what had occurred, Henninge was then on the floor, unconscious. Multiple witnesses testified that Sanders was standing over Henninge and not assisting him. Grauerholz's reaction was to immediately exclaim, "I can't believe you hit my boyfriend." And Sanders did not deny hitting Henninge. Henninge testified that as Sanders came into the garage, he pinned Henninge against the wall with his arm and that from there, Henninge lost consciousness. Bowman, the paramedic who immediately treated Henninge, testified that Henninge had tenderness, swelling, and other signs of impact injury, including lacerations, nosebleed, contusions, and abrasions to his head and neck area. Bowman also testified that Henninge acted consistent with a person who had been hit by a strike that was a "[p]retty severe blunt force. A very good punch, hit, [or] kick."

12

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Sanders intentionally, knowingly, or recklessly caused Henninge's bodily injuries *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 22.01.  Accordingly, we hold that the evidence is sufficient to support Sanders's conviction for assault.  *See Moon v. State*, 44 S.W.3d 589, 593 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that evidence was legally sufficient to prove defendant used his hands to injure his wife, despite lack of direct testimony, because jury could infer use of hands from circumstances surrounding wife's injuries).  We overrule the remainder of Sanders's first point.

## B.    Effective Assistance of Counsel

In his second point, Sanders argues that the trial court abused its discretion by denying his motion for new trial.  Sanders's motion claimed that he received ineffective assistance of counsel.  Filed with his motion, Sanders attached an affidavit of an alleged witness who averred that he would testify that Sanders accidentally ran into Henninge and that Sanders did not intentionally injure Henninge.  Concerned that trial counsel had failed to call a potentially exculpating witness, on October 18, 2010, this court abated Sanders's appeal and remanded the case to the trial court to conduct a hearing on his motion for new trial.  In our abatement order, we specifically stated that "Sanders's trial

13

counsel should have been afforded an opportunity to explain his actions." At the hearing, however, Sanders did not call his original trial counsel to testify and explain his trial tactics. The trial court again denied Sanders's motion for new trial. Thus, we will conduct our analysis of Sanders's second point using the record from the trial and from the abatement hearing.

Our review of counsel's performance must be highly deferential. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984). The burden of proving ineffective assistance of counsel is on the appellant. *Stafford v. State*, 813 S.W.2d 503, 506 n.1 (Tex. Crim. App. 1991); *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams*, 634 S.W.2d 815, 819 (Tex. Crim. App. 1980), *cert. denied*, 459 U.S. 1036 (1982). Effective assistance of counsel is gauged by the totality of the representation from the pretrial representation of the accused through the punishment stage of the trial. *Ex parte Walker*, 777 S.W.2d 427, 431 (Tex. Crim. App. 1989). Thus, the trial as a whole must be reviewed and not simply isolated incidents of counsel's performance. *Cannon*, 668 S.W.2d at 403. The standard of review for ineffective assistance of counsel is the same for all phases of the trial. *See Hernandez v. State*, 988

S.W.2d 770, 772 (Tex. Crim. App. 1999) (*Strickland* standard is standard for all ineffective assistance of counsel claims).

A defendant seeking relief must demonstrate: (1) that counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under the prevailing professional norms; and (2) that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Bone*, 77 S.W.3d at 832.

We begin our analysis with a rebuttable presumption that counsel is better positioned than the appellate court to judge the pragmatism of the particular case and that he made all significant decisions in the exercise of reasonable professional judgment. *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992). The presumption may be rebutted by evidence of counsel's reasoning or lack thereof. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of evidence of counsel's reasons for the challenged conduct, the appellate court will assume a strategic motivation and will not conclude that the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d

436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003); *see Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999). Generally, performance of counsel cannot be adequately examined based on a trial court record. *Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Finally, an appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Strickland*, 466 U.S. at 697, 104 S. Ct. 2069; *Garcia*, 57 S.W.3d at 440.

Here, we find no evidence rebutting the presumption that Sanders's trial counsel made all significant decisions in the exercise of reasonable professional judgment. Sanders contends that trial counsel was ineffective because he did not call an alleged eyewitness to the stand who would have said that Sanders's encounter with Henninge was an accident. Even though this court abated this appeal and remanded for a hearing, allowing trial counsel to give his reasons for not calling this witness, Sanders did not call trial counsel to the hearing. And, as the State argues, Sanders's trial counsel's choosing not to call this witness may have been reasonable trial strategy in that trial counsel may have concluded that this witness was unreliable and unbelievable. The record does show that trial counsel made numerous objections and repeatedly attempted to elicit testimony that Sanders did not intentionally harm Henninge. With the limited record this court has to review, we hold that Sanders has failed to meet his burden of

proving by a preponderance of the evidence that his trial counsel was ineffective. Accordingly, we overrule Sanders's second point.

### C. Restitution

In his third point, Sanders argues that the trial court abused its discretion by ordering him to pay $21,541 in restitution to Henninge. The State argues (1) that Sanders failed to preserve this issue for our review and (2) that the restitution amount was supported by the record and was within the sound discretion of the trial court to impose. Assuming without deciding that Sanders has preserved this issue for our review, we agree with the State that the trial court did not abuse its discretion in ordering the amount of restitution to be paid.

We review a trial court's decision to order restitution for an abuse of discretion. *See Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999); *Burris v. State*, 172 S.W.3d 75, 77 (Tex. App.—Fort Worth 2005, no pet.); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). An abuse of discretion occurs if the trial court acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when it sets restitution in an amount that is unjust or unsupported by facts. *Campbell*, 5 S.W.3d at 696 (citing *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. [Panel Op.] 1980)).

The code of criminal procedure provides that "the court that sentences a defendant convicted of an offense may order the defendant to make restitution." Tex. Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp. 2010); *see also* Tex. Const. art. I, § 30(b)(4); *Weir v. State*, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009). In determining the amount of restitution, the court shall consider "the amount of the loss sustained by any victim" and "other factors the court deems appropriate." Tex. Code Crim. Proc. Ann. art. 42.037(c). "The court shall impose an order of restitution that is as fair as possible to the victim," and the "standard of proof is a preponderance of the evidence." Tex. Code Crim. Proc. Ann. art. 42.037(e), (k). *See Burris*, 172 S.W.3d at 78 (explaining that "testimony from a . . . victim of the crime with personal knowledge of the amount of [damages] incurred . . . is adequate to support a restitution order"). The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney. Tex. Code Crim. Proc. Ann. art. 42.037(k).

In this case, the State introduced several exhibits that specifically detail the amount owed by Henninge to numerous medical providers in relation to the injuries he sustained on April 22, 2007. According to bills introduced at trial, the total cost of Henninge's medical treatment owing as a result of the injuries he sustained was $21,541—the amount the trial court awarded as restitution. At the sentencing hearing, there was also testimony that the bills in relation to

18

Henninge's injuries were delinquent and that any restitution would go to compensate Henninge in payment of his medical expenses. Furthermore, a jury found Sanders guilty of the assault that caused Henninge's injuries. *See Campbell*, 5 S.W.3d at 697 ("A trial court may not order restitution for an offense for which the defendant is not criminally responsible."). We hold that the record supports the restitution ordered by the trial court. Thus, the trial court did not abuse its discretion. We overrule Sanders's third point.

## IV. CONCLUSION

Having overruled all three of Sanders's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: May 5, 2011

19



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00221-CR

THOYS DEWAYNE SANDERS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I write separately because the majority appears to place a burden of proof on Appellant. The majority appears to say, in part, that the evidence is sufficient because "Grauerholz's reaction was to immediately exclaim, 'I can't believe you hit my boyfriend.' *And Sanders did not deny hitting Henninge.*"[1] If the majority requires Appellant to waive his Fifth Amendment right and deny the offense, I must respectfully dissent.

---

[1]Majority op. at 12 (emphasis added).

As to the allegations of ineffective assistance of counsel, the record reflects that Appellant made an offer of proof that a specific witness, Jeremiah Langen, would testify that he witnessed the event and that "[i]t was a complete accident." Appellant argued that the failure of trial counsel to interview or call Langen, a material witness, was deficient performance on its face.

This court abated to allow trial counsel to explain his failure to interview or call Langen to testify. The majority states that we must presume "that counsel is better positioned than the appellate court to judge the pragmatism of the particular case and that he made all significant decisions in the exercise of reasonable professional judgment,"[2] relying on *Delrio v. State*, a jury selection case questioning the wisdom of putting a particular juror on the panel.[3]

Here, the question is how can trial counsel justify not calling to the stand or even interviewing a witness who saw what happened and said that Appellant committed no assault. That is a far different issue than jury selection.

Instead of relying on caselaw that addresses jury selection, we should look at ineffective assistance cases in which trial counsel failed to investigate and failed to call witnesses to testify. We should not create an explanation for such failure and put it in the mouth of the nontestifying trial counsel.

The Texas Court of Criminal Appeals has instructed us that

---

[2]*Id.* at 15.

[3]840 S.W.2d 443, 446–47 (Tex. Crim. App. 1992).

[i]n evaluating the potential impact of an alibi witness, we must also consider the relative strength of the State's case. We compare the evidence presented by the State with the evidence the jury did *not* hear due to trial counsel's failure to investigate.[4]

Here, Henninge did not remember what had happened to him. Everyone else guessed or speculated about what had happened. Only Langen actually saw what had happened, but trial counsel did not interview him. What possible trial strategy could involve not interviewing the only eyewitness?

Because I cannot think of any, I respectfully dissent.


                                         LEE ANN DAUPHINOT
                                         JUSTICE

PUBLISH

DELIVERED: May 5, 2011

---

[4]*Perez v. State*, 310 S.W.3d 890, 896 (Tex. Crim. App. 2010) (citations and internal quotations omitted).

3