

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00103-CR

BRUCE W. MURRAY                                                                                      APPELLANT

V.

THE STATE OF TEXAS                                                                                           STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Bruce W. Murray appeals his conviction for burglary of a habitation.[2] In two points, Murray contends that the evidence is legally insufficient to support his conviction and that he received ineffective assistance of counsel at trial. We will affirm.

----

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 30.02(a), (c)(2) (West 2011).

## II. BACKGROUND

Brian Call was in his backyard one afternoon when he noticed some unusual movement across his back fence in his neighbor's yard. On closer examination, Call could see someone trying to enter the backyard of his neighbor, Leonard George Tippens, who was not home at the time. Call moved closer, looked through the slats of the privacy fence, and saw a bald African-American male, wearing what appeared to be light blue jeans and a darker blue shirt that was "either short sleeve or long sleeve with the sleeves bunched up."

Call contacted 9-1-1 as he stepped up to get a clearer view over the top of the fence and looked through Tippens's window to see the man inside the house loading items into a grocery cart. Suspecting that the intruder was about to leave through Tippens's driveway, Call moved around to another section of his fence and watched the man, who was now outside, leave the property with the grocery cart, heading north toward Magnolia through a vacant parking lot across the street. Call later testified that he had a good, clear view of the man for approximately five to ten minutes from the time he first saw movement until he saw the man walking away.

Police Officers Chris Gray and Amelia Johnson were together on special detail when they responded to the 9-1-1 dispatch. Dispatch informed them that the suspect had been seen wearing blue jeans and a gray shirt, but dispatch later updated the shirt's description to blue. Within minutes of being dispatched, while driving southbound on Hemphill, Gray and Johnson saw two black males moving

2

eastbound on West Oleander a few blocks away from Tippens's home. One of the men, Murray, matched dispatch's description and was pushing a shopping cart with a cardboard box covering its contents. After stopping the men, the officers inspected the shopping cart and found that it contained a miter saw with wooden stands attached to it, a gas can, and a halogen lamp. When asked who owned the items, Murray stated that a gentleman around the corner owned them, but Murray could not identify the specific owner and continued to be evasive after further inquiry. This encounter took place about a block and a half or two blocks away from Magnolia and a few blocks away from Tippens's home.

Next, Officer Laura Walter arrived where the two men were stopped. Shortly thereafter, Call arrived and unequivocally identified Murray as the man he saw inside Tippens's home and who left pushing a grocery cart. Call also recognized Murray's clothing as the same clothing that the intruder had been wearing inside Tippens's home. According to Walter, Murray was wearing blue jeans and a blue shirt at the time of his arrest. After the officers photographed the items from the grocery cart, Walter showed them to Tippens at Tippens's house. Tippens identified the miter saw and halogen lamp as his, which he normally kept inside his home near the back entry. The officers then returned the items to Tippens and transported Murray to jail.

At trial, Walter identified Murray as being the man she arrested and Call identified as the intruder. When Call testified, however, he was unable to identify Murray as the man he saw inside Tippens's home and he could not identify the

3

clothes in the exhibits—a gray shirt and blue jeans—as the clothes worn by the intruder he had seen inside Tippens's home.

In his defense, Murray sought to introduce in evidence the clothing he was wearing when he was booked into the jail after he was arrested. After taking Murray's witness on voir dire, the State mounted a chain-of-title objection. The trial court sustained the State's objection to the clothing on grounds that Murray's witness was not the booking agent who actually bagged the clothes and checked them in after Murray's arrest. After the State had rested and closed, Murray closed "subject to being given the opportunity to get the [person who did check in the clothing] over here to substantiate the clothing." When proceedings began the next morning, however, Murray rested and closed without calling any witness or attempting to put on any more evidence. The jury found Murray guilty, and the trial court sentenced him to twenty-eight years' confinement. The trial court entered judgment accordingly. This appeal followed.

### III. DISCUSSION

#### A. Sufficiency of the Evidence

In his first point, Murray contends that the evidence is insufficient to support his conviction. Specifically, he contends that the evidence is insufficient to support the jury's finding that he was the person who committed the burglary. We disagree.

##### 1. Standard of Review

4

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712 (2012). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is

as probative as direct evidence in establishing the guilt of an actor. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13.

### 2.    Burglary and Identification

A person commits burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a theft. Tex. Penal Code Ann. § 30.02(a)(1) (West 2011). At issue in this case is whether the evidence before the jury was sufficient to prove that Murray was the person who committed the burglary in light of conflicting evidence as to Call's ability to clearly see into Tippens's home when he was watching the intruder. When the record supports conflicting inferences, the reviewing court must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *See Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). Also, even if a witness fails to make a positive in-court identification, the verdict is not rendered improper if other evidence shows that the defendant was the perpetrator. *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd).

### 3.    Analysis

Murray argues that the evidence is insufficient to support his conviction because Call viewed the person in his neighbor's home through windows the homeowner and a police officer described as "foggy" or "cloudy" and because Call was later unable to identify Murray in court.

6

But Call testified that he had an unobstructed view of the intruder, both inside and outside the house, for five to ten minutes. Therefore, the trier of fact was free to conclude that the windows were at least clear enough for Call to see that the individual inside Tippens's home was the same individual that he had seen enter through the backyard and leave with the grocery cart.

Further, although Call did not identify Murray in court, he unequivocally identified him as the perpetrator at the scene of the arrest, and Officer Walter identified Murray in court as both the individual she arrested the day of the burglary and as the individual Call identified as the perpetrator at the scene of the arrest.

Viewing the evidence in the light most favorable to the verdict, the record demonstrates that Call watched a man matching Murray's description enter Tippens's backyard, be inside the home, load items into a grocery cart, and then push the cart down Tippens's driveway and through a vacant lot across the street. Within minutes of the 9-1-1 dispatch, and only a few blocks from Tippens's home, Officers Gray and Johnson saw Murray, who matched dispatch's description of the suspect, pushing a grocery cart covered by a piece of cardboard and containing a miter saw, gas can, and halogen lamp. When Gray asked Murray two or three times who owned the items, Murray could not identify the owner and seemed evasive. Tippens later identified the miter saw and halogen lamp as his, and said that those items had been just inside the

sliding glass door leading directly to his backyard where Call first saw the intruder.

Thus, a rational trier of fact could have found beyond a reasonable doubt that Murray was the person who committed the burglary based on Call's identification of Murray as the burglar at the time of the arrest and Murray's unexplained possession of the items stolen from Tippens's home at a nearby location, shortly after the burglary occurred. *See Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006) ("[A] defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary."); *see also Lemons v. State*, No. 02-10-00301-CR, 2011 WL 3795266, at *5–6 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op., not designated for publication) (holding burglary of habitation evidence legally sufficient when someone roughly matching defendant's description was seen exiting the home and within minutes was found with stolen items from the home in his pockets). Accordingly, we hold that the evidence is sufficient to support Murray's conviction for burglary of a habitation, and we overrule Murray's first point.

**B.   Effective Assistance of Counsel**

In his second point, Murray contends that he received ineffective assistance of counsel because his trial counsel did not call the actual person from the jail's booking office who checked in Murray's clothing at the time of

Murray's arrest to prove the chain of custody even though counsel had stated on the record that he intended to.

To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on

direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

As a general rule, we do not speculate about trial counsel's strategy, and we will not second guess through hindsight the strategy of counsel at trial. *Hill v. State*, 303 S.W.3d 863, 878–79 (Tex. App.—Fort Worth 2009, pet. ref'd). Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.

Crim. App. 2005). In the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined and will not conclude that the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *Sanders v. State*, 346 S.W.3d 26, 34 (Tex. App.—Fort Worth 2011, pet ref'd). Generally, performance of counsel cannot adequately be examined based on a trial court record. *Id.*

Here, because Murray's motion for new trial did not assert ineffective assistance of counsel, the trial court did not have a chance to hold a hearing to inquire into the reasons for trial counsel's decision not to call the witness. *See Hill*, 303 S.W.3d at 879. Thus, the record is not sufficiently developed to allow us to do more than speculate as to the strategies of trial counsel, and therefore we cannot determine that Murray was denied effective assistance of counsel. *See Pollock v. State*, No. 02-10-00514-CR, 2011 WL 4345295, at *2–3 (Tex. App.—Fort Worth Sept. 15, 2011, pet. ref'd) (mem. op., not designated for publication) (declining to hold that appellant received ineffective assistance of counsel when appellant did not complain of ineffective assistance in motion for new trial and no hearing was held on the motion; thus, there was no record demonstrating that counsel's acts or omissions were ineffective). Murray has a more appropriate remedy in seeking a writ of habeas corpus to allow him the opportunity to develop evidence to support his claims. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Thus, we overrule Murray's second point.

11

## IV. Conclusion

Having overruled both of Murray's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 26, 2012