02-11-103-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00103-CR

 

 


 
 
 Bruce W. Murray
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 396th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Bruce W. Murray appeals his conviction for burglary of a habitation.[2] 
In two points, Murray contends that the evidence is legally insufficient to
support his conviction and that he received ineffective assistance of counsel
at trial.  We will affirm.

II. 
Background

          Brian
Call was in his backyard one afternoon when he noticed some unusual movement
across his back fence in his neighbor’s yard.  On closer examination, Call
could see someone trying to enter the backyard of his neighbor, Leonard George
Tippens, who was not home at the time.  Call moved closer, looked through the
slats of the privacy fence, and saw a bald African-American male, wearing what
appeared to be light blue jeans and a darker blue shirt that was “either short
sleeve or long sleeve with the sleeves bunched up.”

          Call
contacted 9-1-1 as he stepped up to get a clearer view over the top of the
fence and looked through Tippens’s window to see the man inside the house
loading items into a grocery cart.  Suspecting that the intruder was about to
leave through Tippens’s driveway, Call moved around to another section of his
fence and watched the man, who was now outside, leave the property with the
grocery cart, heading north toward Magnolia through a vacant parking lot across
the street.  Call later testified that he had a good, clear view of the man for
approximately five to ten minutes from the time he first saw movement until he
saw the man walking away.

          Police
Officers Chris Gray and Amelia Johnson were together on special detail when
they responded to the 9-1-1 dispatch.  Dispatch informed them that the suspect
had been seen wearing blue jeans and a gray shirt, but dispatch later updated
the shirt’s description to blue.  Within minutes of being dispatched, while
driving southbound on Hemphill, Gray and Johnson saw two black males moving
eastbound on West Oleander a few blocks away from Tippens’s home.  One of the
men, Murray, matched dispatch’s description and was pushing a shopping cart
with a cardboard box covering its contents.  After stopping the men, the
officers inspected the shopping cart and found that it contained a miter saw
with wooden stands attached to it, a gas can, and a halogen lamp.  When asked
who owned the items, Murray stated that a gentleman around the corner owned
them, but Murray could not identify the specific owner and continued to be
evasive after further inquiry.  This encounter took place about a block and a
half or two blocks away from Magnolia and a few blocks away from Tippens’s
home.

          Next,
Officer Laura Walter arrived where the two men were stopped.  Shortly
thereafter, Call arrived and unequivocally identified Murray as the man he saw
inside Tippens’s home and who left pushing a grocery cart.  Call also
recognized Murray’s clothing as the same clothing that the intruder had been
wearing inside Tippens’s home.  According to Walter, Murray was wearing blue
jeans and a blue shirt at the time of his arrest.  After the officers
photographed the items from the grocery cart, Walter showed them to Tippens at
Tippens’s house.  Tippens identified the miter saw and halogen lamp as his,
which he normally kept inside his home near the back entry.  The officers then
returned the items to Tippens and transported Murray to jail.

          At
trial, Walter identified Murray as being the man she arrested and Call
identified as the intruder.  When Call testified, however, he was unable to
identify Murray as the man he saw inside Tippens’s home and he could not
identify the clothes in the exhibits—a gray shirt and blue jeans—as the clothes
worn by the intruder he had seen inside Tippens’s home.

          In
his defense, Murray sought to introduce in evidence the clothing he was wearing
when he was booked into the jail after he was arrested.  After taking Murray’s
witness on voir dire, the State mounted a chain-of-title objection.  The trial
court sustained the State’s objection to the clothing on grounds that Murray’s
witness was not the booking agent who actually bagged the clothes and checked
them in after Murray’s arrest.  After the State had rested and closed, Murray
closed “subject to being given the opportunity to get the [person who did check
in the clothing] over here to substantiate the clothing.”  When proceedings
began the next morning, however, Murray rested and closed without calling any
witness or attempting to put on any more evidence.  The jury found Murray
guilty, and the trial court sentenced him to twenty-eight years’ confinement. 
The trial court entered judgment accordingly.  This appeal followed.

III. 
Discussion

          A.      Sufficiency
of the Evidence

          In
his first point, Murray contends that the evidence is insufficient to support
his conviction.  Specifically, he contends that the evidence is insufficient to
support the jury’s finding that he was the person who committed the burglary. 
We disagree.

                   1.       Standard
of Review

          In
reviewing the sufficiency of the evidence to support a conviction, we view all
of the evidence in the light most favorable to the prosecution in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Runningwolf v. State,
360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

          This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Lucio v. State, 351 S.W.3d 878, 894 (Tex. Crim.
App. 2011), cert. denied, 132 S. Ct. 2712 (2012).  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).
Thus, when performing a legal sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we determine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  The standard of review is the same for direct
and circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Isassi v. State,
330 S.W.3d 633, 638 (Tex. Crim. App. 2010); Hooper, 214 S.W.3d at 13.

                   2.       Burglary
and Identification

          A
person commits burglary of a habitation if, without the effective consent of
the owner, he enters a habitation with intent to commit a theft.  Tex. Penal
Code Ann. § 30.02(a)(1) (West 2011).  At issue in this case is whether the
evidence before the jury was sufficient to prove that Murray was the person who
committed the burglary in light of conflicting evidence as to Call’s ability to
clearly see into Tippens’s home when he was watching the intruder.  When the
record supports conflicting inferences, the reviewing court must presume that
the trier of fact resolved any such conflicts in favor of the prosecution, and
must defer to that resolution.  See Padilla v. State, 326 S.W.3d 195,
200 (Tex. Crim. App. 2010).  Also, even if a witness fails to make a positive
in-court identification, the verdict is not rendered improper if other evidence
shows that the defendant was the perpetrator.  Couchman v. State, 3
S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref’d).

                   3.       Analysis

          Murray
argues that the evidence is insufficient to support his conviction because Call
viewed the person in his neighbor’s home through windows the homeowner and a
police officer described as “foggy” or “cloudy” and because Call was later
unable to identify Murray in court.

          But
Call testified that he had an unobstructed view of the intruder, both inside
and outside the house, for five to ten minutes.  Therefore, the trier of fact
was free to conclude that the windows were at least clear enough for Call to
see that the individual inside Tippens’s home was the same individual that he
had seen enter through the backyard and leave with the grocery cart.

          Further,
although Call did not identify Murray in court, he unequivocally identified him
as the perpetrator at the scene of the arrest, and Officer Walter identified
Murray in court as both the individual she arrested the day of the burglary and
as the individual Call identified as the perpetrator at the scene of the
arrest.

          Viewing
the evidence in the light most favorable to the verdict, the record
demonstrates that Call watched a man matching Murray’s description enter
Tippens’s backyard, be inside the home, load items into a grocery cart, and
then push the cart down Tippens’s driveway and through a vacant lot across the
street.  Within minutes of the 9-1-1 dispatch, and only a few blocks from
Tippens’s home, Officers Gray and Johnson saw Murray, who matched dispatch’s
description of the suspect, pushing a grocery cart covered by a piece of
cardboard and containing a miter saw, gas can, and halogen lamp.  When Gray
asked Murray two or three times who owned the items, Murray could not identify
the owner and seemed evasive.  Tippens later identified the miter saw and
halogen lamp as his, and said that those items had been just inside the sliding
glass door leading directly to his backyard where Call first saw the intruder.

          Thus,
a rational trier of fact could have found beyond a reasonable doubt that Murray
was the person who committed the burglary based on Call’s identification of
Murray as the burglar at the time of the arrest and Murray’s unexplained
possession of the items stolen from Tippens’s home at a nearby location,
shortly after the burglary occurred.  See Poncio v. State, 185
S.W.3d 904, 905 (Tex. Crim. App. 2006) (“[A] defendant’s unexplained possession
of property recently stolen in a burglary permits an inference that the
defendant is the one who committed the burglary.”); see also Lemons v. State,
No. 02-10-00301-CR, 2011 WL 3795266, at *5–6 (Tex. App.—Fort Worth Aug. 25,
2011, no pet.) (mem. op., not designated for publication) (holding burglary of
habitation evidence legally sufficient when someone roughly matching
defendant’s description was seen exiting the home and within minutes was found
with stolen items from the home in his pockets).  Accordingly, we hold that the
evidence is sufficient to support Murray’s conviction for burglary of a
habitation, and we overrule Murray’s first point.

          B.      Effective
Assistance of Counsel

          In
his second point, Murray contends that he received ineffective assistance of
counsel because his trial counsel did not call the actual person from the
jail’s booking office who checked in Murray’s clothing at the time of Murray’s
arrest to prove the chain of custody even though counsel had stated on the
record that he intended to.

          To
establish ineffective assistance of counsel, a defendant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104
S. Ct. at 2065.  Review of counsel’s representation is highly deferential,
and the reviewing court indulges a strong presumption that counsel’s conduct
fell within a wide range of reasonable representation.  Salinas, 163
S.W.3d at 740; Mallett, 65 S.W.3d at 63.

          A
reviewing court will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim.  Salinas, 163
S.W.3d at 740; Thompson, 9 S.W.3d at 813–14.  “In the majority of cases,
the record on direct appeal is undeveloped and cannot adequately reflect the
motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at 740
(quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.” Id. (quoting Thompson, 9 S.W.3d at
813).  It is not appropriate for an appellate court to simply infer ineffective
assistance based upon unclear portions of the record.  Mata
v. State, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

          The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Strickland, 466 U.S. at 687, 104 S. Ct. at
2064.  In other words, the appellant must show there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  Id. at 694, 104 S. Ct. at
2068.  A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Id.  The ultimate focus of our inquiry must
be on the fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

          As
a general rule, we do not speculate about trial counsel’s strategy, and we will
not second guess through hindsight the strategy of counsel at trial.  Hill
v. State, 303 S.W.3d 863, 878–79 (Tex. App.—Fort Worth 2009, pet. ref’d). 
Trial counsel should ordinarily be afforded an opportunity to explain his
actions before being denounced as ineffective.  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005).  In the absence of direct evidence in
the record of counsel’s reasons for the challenged conduct, an appellate court
will assume a strategic motivation if any can be imagined and will not conclude
that the conduct was deficient unless the conduct was so outrageous that no
competent attorney would have engaged in it.  Sanders v. State, 346
S.W.3d 26, 34 (Tex. App.—Fort Worth 2011, pet ref’d).  Generally, performance
of counsel cannot adequately be examined based on a trial court record.  Id.

          Here,
because Murray’s motion for new trial did not assert ineffective assistance of
counsel, the trial court did not have a chance to hold a hearing to inquire
into the reasons for trial counsel’s decision not to call the witness.  See
Hill, 303 S.W.3d at 879.  Thus, the record is not sufficiently developed to
allow us to do more than speculate as to the strategies of trial counsel, and
therefore we cannot determine that Murray was denied effective assistance of
counsel.  See Pollock v. State, No. 02-10-00514-CR, 2011 WL
4345295, at *2–3 (Tex. App.—Fort Worth Sept. 15, 2011, pet. ref’d) (mem.
op., not designated for publication) (declining to hold that appellant received
ineffective assistance of counsel when appellant did not complain of
ineffective assistance in motion for new trial and no hearing was held on the
motion; thus, there was no record demonstrating that counsel’s acts or
omissions were ineffective).  Murray has a more appropriate remedy in seeking a
writ of habeas corpus to allow him the opportunity to develop evidence to
support his claims.  See Rylander v. State, 101 S.W.3d 107, 110 (Tex.
Crim. App. 2003).  Thus, we overrule Murray’s second point.

IV. 
Conclusion

          Having
overruled both of Murray’s points, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 26, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 30.02(a), (c)(2) (West 2011).