**Opinion issued July 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00598-CR

_____

**NATHAN DEWAYNE MCDANIEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 355th District Court**
**Hood County, Texas**
**Trial Court Case No. CR13832**

---

## MEMORANDUM OPINION

Nathan Dewayne McDaniel was indicted on four counts: Counts One and

Two for sexual assault of a child[1] and Counts Three and Four for indecency with a

---

[1]    *See* TEX. PENAL CODE § 22.011(a)(2).

child.[2] The State dismissed Count Three. A Hood County[3] jury acquitted on Count Four. But the jury returned guilty verdicts on Counts One and Two. It assessed punishment at 99 years' imprisonment, and a $10,000 fine, on each count. The trial court entered conforming judgments.

On appeal, McDaniel raises a single issue with four subparts: he contends that he received ineffective assistance of counsel for his trial counsel's (1) failing to object to the State's alleged violations of rulings *in limine*, (2) failing to object to the State's alleged violation of Code of Criminal Procedure article 38.37's notice requirement, (3) failing to object to the trial court's alleged violation of Article 38.37's hearing requirement, and (4) failing to preserve error for appeal on these topics. Finding no error, we affirm.

## Background

Because McDaniel does not challenge the sufficiency of the evidence to support his conviction, we will only briefly recount the instances of sexual assault of a child upon which he was indicted and convicted.

---

[2] *See id.* § 21.11(a).

[3] Pursuant to the Supreme Court of Texas's docket-equalization powers, this appeal was transferred from the Second Court of Appeals to this court on July 9, 2018. *See* TEX. GOV'T CODE §§ 73.001–.002; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 18-9083 (Tex. June 19, 2018). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

McDaniel is the father of the two girls "Mary" and "Cathy."[4] While in high school, Mary told her boyfriend via text message that McDaniel had sexually abused her over a period of time. The boyfriend's mother discovered the text messages. She reported what Mary said to school personnel, who then contacted law enforcement. Investigators sent Mary to a nearby hospital to be seen by a Sexual Assault Nurse Examiner ("SANE").

The SANE that examined Mary, S. Henley, testified at trial. She described her process for conducting a medical exam of a child who has allegedly been sexually assaulted. Henley does "a full head-to-toe assessment" of the child, including by taking a "past medical history" and a "history of present illness." To do so, Henley uses "a protocol of specific questions." In response to Henley's questions, Mary told her both that McDaniel had put his finger or hand in her vagina and that he had penetrated her vagina with his penis. Both acts caused Mary pain. Mary also told Henley that McDaniel had put his finger or hand "in her butt" but that he had not also put his penis or any other foreign object "in her butt."

Mary testified at trial too. She said that, once, while she was lying down in her room after a long day at school, McDaniel entered her room. Both she and he

---

[4]    To protect their privacy, we refer to the girls using pseudonyms. *See, e.g.*, *Alvarez v. State*, 491 S.W.3d 362, 365 n.2 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

were wearing pajamas. McDaniel got on her bed, she froze and didn't say or do anything because she was scared, and "his penis went into [her] vagina."

Based in part on Henley's and Mary's testimony, the jury convicted McDaniel both of sexual assault of a child by causing the penetration of Mary's sexual organ with his penis and of sexual assault of a child by causing the penetration of Mary's sexual organ with his finger. The court entered judgments of conviction on the jury's verdict.

Before trial, McDaniel's counsel filed a motion *in limine*, which the court granted. The court granted McDaniel's request that, before there could be any reference in the presence of the jury to any extraneous-act offenses committed by McDaniel, there would be a hearing outside the presence of the jury. The court during the hearing would determine whether counsel for the State or its witnesses could discuss those offenses.

## Ineffective Assistance of Counsel

In his sole issue, McDaniel contends that his trial counsel was ineffective in four ways: (1) failing to object to the counsel for the State's alleged violations of the order *in limine* during opening statement and during Mary's direct examination; (2) failing to object to the State's alleged failure to have given 30 days' notice of its intent to use extraneous-act evidence; (3) failing to object to

4

the trial court's failure to have held a hearing under Article 38.37, § 2-a(2); and (4) failing to preserve error for appeal on these topics.

## I.     Standard of Review and Applicable Law

To establish ineffective assistance of trial counsel, an appellant must show by a preponderance of the evidence both (1) that trial counsel's representation was deficient, meaning that it fell below an objective standard of reasonableness, and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The evidence of ineffective assistance "must be firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson*, 9 S.W.3d at 813. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim" because "[a]bsent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable." *Id.*

In evaluating a claim under the first, deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case to see whether counsel's assistance was reasonable under all the circumstances and under prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89; *Thompson*, 9 S.W.3d at 813. This precludes assessing

counsel's performance by using "the benefit of hindsight or by relying on only isolated circumstances at trial." *Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014). Our review of counsel's performance "must be highly deferential," and we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Thompson*, 9 S.W.3d at 813.

A direct appeal is usually an inadequate vehicle for raising ineffective assistance because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012). Importantly, "counsel's reasons for failing to do something do not appear in the record" in the typical direct appeal. *Id.* at 593. As a result,

> Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.

*Id.* (internal quotations omitted). This standard is deferential to trial counsel: "in the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined.'" *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c) (2d ed. 1999)).

In all,

> A claimant must generally prove deficiency using affirmative evidence in the trial record sufficient to overcome the presumption that the challenged action was sound trial strategy. However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflect[s] the trial counsel's subjective reasons for act[ing] as [he] did."

*Bryant*, 448 S.W.3d at 39–40 (internal citations omitted; alterations in original) (quoting *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)).

In the context of admission of evidence of extraneous-act sexual assaults in sexual-assault cases, and on direct appeal, trial counsel's assistance generally is not held to be ineffective for the failure to have objected to the extraneous-act evidence. *See, e.g.*, *Burke v. State*, 371 S.W.3d 252, 256–58 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *Howland v. State*, 966 S.W.2d 98, 104–05 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999). In such cases, many extraneous-act offenses are admissible anyway, including for purposes beyond showing that the defendant acted in conformity with his or her character. *See Taylor v. State*, 509 S.W.3d 468, 476–78 (Tex. App.—Austin 2015, pet. ref'd); *Burke*, 371 S.W.3d at 256–58; *Jones v. State*, 119 S.W.3d 412, 420–21 (Tex. App.—Fort Worth 2003, no pet.). Failing to object to otherwise admissible evidence is not ineffective assistance. *See Burke*, 371 S.W.3d at 256–58. And even if the extraneous-act evidence is inadmissible, it may still be sound trial strategy—

and, thus, not ineffective assistance—not to object. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.).

In the same vein, trial counsel's failure to request a hearing outside the presence of the jury to assess the admissibility of evidence that proves to be admissible is not ineffective assistance. *See Mowbray v. State*, 788 S.W.2d 658, 670–71 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd); *see also Fetterolf v. State*, 782 S.W.2d 927, 930–31 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (holding that "appellant's case" at trial suffered no prejudice by State's failure to provide required notice of outcry testimony and that outcry testimony was admissible over hearsay objection).

Under ineffective assistance's second, prejudice prong, *Strickland* requires an appellant to show a reasonable probability that, but for trial counsel's errors, the outcome of the appellant's trial would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Sanders v. State*, 346 S.W.3d 26, 34 (Tex. App.—Fort Worth 2011, pet. ref'd). A "reasonable probability" is a probability sufficient to undermine confidence in the conclusion that the defendant was given a trial whose result is reliable. *See Gomez v. State*, 552 S.W.3d 422, 432–33 (Tex. App.—Fort Worth 2018, no pet.). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

8

one with overwhelming record support." *Id.* at 433 (alteration in original) (quoting *Strickland*, 466 U.S. at 696).

As relevant to this appeal, Code of Criminal Procedure article 38.37 provides:

> Sec. 2. (a) Subsection (b) applies only to the trial of a defendant for:
>
> > (1) an offense under any of the following provisions of the Penal Code:
>
> . . . .
>
> > > (C) Section 21.11 (Indecency With a Child);
> > >
> > > (D) Section 22.011(a)(2) (Sexual Assault of a Child);
>
> . . . .
>
> (b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.
>
> Sec. 2-a. Before evidence described by Section 2 may be introduced, the trial judge must:
>
> > (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
> >
> > (2) conduct a hearing out of the presence of the jury for that purpose.
>
> Sec. 3. The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial.

## II. Hearing Under Article 38.37, § 2-a(2)

McDaniel argues that his trial counsel's failure to have objected to the trial court's failure to have held the hearing required by Article 38.37, § 2-a(2), is ineffective assistance. He argues that evidence of several extraneous-act sexual assaults committed by him against Mary and Cathy should have been assessed first in a hearing under Article 38.37, § 2-a(2), outside the presence of the jury. His counsel's failure to have objected to the lack of such a hearing is, he says, ineffective assistance.

Mary testified about three extraneous-act sexual assaults committed by McDaniel against her in addition to the two instances of penetration of her sexual organ that formed the bases of Counts One and Two. The first such assault involved McDaniel asking Mary to touch his penis when she was six years old. Mary felt ill at school, so McDaniel brought her home. While McDaniel was lying on the bed in his room, Mary went to lie down with him because she still did not feel well. McDaniel was watching what Mary described as inappropriate videos—ones in which the people were naked. McDaniel then asked Mary to touch his penis with her hand and to move her hand up and down on it. Nothing "c[a]me out of his penis" on that occasion.

During the second extraneous-act assault that Mary testified about, the "same thing that happened at the house" happened again. McDaniel made her

10

touch his penis with her hand, and something "c[a]me out of his penis" on this occasion. He told her not to tell anyone about what happened, including her mother, because no one would believe her. Mary described this second assault to the SANE during her examination, and the SANE testified about it at trial.

Finally, when Mary was 15 years old, she was injured during athletics. While at home later that day, she asked McDaniel to put pressure on her leg to ease the pain. Mary was lying on her stomach on her bed, wearing basketball shorts and underwear. McDaniel rubbed her injured leg. Then, his finger "went in [her] bottom." Mary did not want him to do this. The incident ended with McDaniel going to the kitchen and washing his hand.

In an interview with investigators, McDaniel admitted that Mary had licked his penis and had "jacked [him] off" using her hand. He also admitted to putting his finger in her anus, but he claimed that it was unintentional.

As for Cathy, she testified about one morning when she was nine or ten years old. Her mother and stepsisters went to the gym, leaving her home alone with McDaniel. Because Cathy had nightmares, McDaniel asked her to come to his bed. She got into his bed and under the covers with him. She was wearing pajamas and he just his underwear. He put his hand inside her pajama pants but outside her underwear. He rubbed her "private parts." Then he put his hands inside her underwear and rubbed her private parts again. Then he took off his underwear,

11

pulled off her pajama pants and underwear, and put his penis inside of her vagina. This hurt her and made her feel scared and upset.

The trial court did not hold a hearing under Article 38.37, § 2-a(2), to assess whether the evidence of the extraneous-act assaults should be admitted. But if it had, it would have found the evidence as to Mary admissible. Evidence of extraneous-act offenses "shall be admitted for its bearing on relevant matters, including: . . . the previous . . . relationship between the defendant and the child," "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence." TEX. CODE CRIM. PROC. art. 38.37, § 1(b); *see also Sanders v. State*, 255 S.W.3d 754, 759–60 (Tex. App.—Fort Worth 2008, pet. ref'd). This kind of evidence is *required* to be admitted. *See Distefano v. State*, 532 S.W.3d 25, 36 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Mary's testimony about McDaniel making her touch his penis and putting his finger in her anus bears on their prior relationship, helps demonstrate "the unnatural attitude and relationship" McDaniel "had developed toward" Mary, and suggests that McDaniel "saw sex with" Mary as something "that he took lightly." *See Sanders*, 255 S.W.3d at 759. Mary's extraneous-act testimony was therefore admissible under Article 38.37, § 1. *See id.*; *see also Sebalt v. State*, 28 S.W.3d 819, 821 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.); *Hinojosa v. State*, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.). So, had the trial court conducted the hearing under Article 38.37,

12

§ 2-a(2), it would have found the evidence admissible. Because the evidence that McDaniel complains of was admissible, his trial counsel's failure to secure a hearing under Article 38.37, § 2-a(2), was not ineffective assistance. *See Taylor*, 509 S.W.3d at 476–78; *Burke*, 371 S.W.3d at 256–58; *Jones*, 119 S.W.3d at 420–21; *see also Fetterolf*, 782 S.W.2d at 930–31.

As for Cathy's extraneous-act testimony, our decision in *Alvarez v. State*, 491 S.W.3d 362 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd), shows that that testimony would be admissible too. In *Alvarez*, similar evidence of extraneous-act sexual assaults against children other than the complainant was held to be admissible over a Rule of Evidence 403 objection. *Id.* at 370–71; *accord Caston v. State*, 549 S.W.3d 601, 611–14 (Tex. App.—Houston [1st Dist.] 2017, no pet.). This court reasoned that "Alvarez's other sexual assaults were relevant to [complainant]'s credibility and therefore were prejudicial to Alvarez." *Alvarez*, 491 S.W.3d at 371. Likewise here, Rules of Evidence 402 and 403 would not have supported exclusion of the Cathy-related testimony. And Article 38.37, § 2(b), would allow admission of the same testimony notwithstanding Rules of Evidence 404 and 405. *See id.* Therefore, no rule of inadmissibility advanced by McDaniel would have required exclusion of the Cathy-related testimony. As a result, McDaniel's trial counsel was not ineffective for failing to have secured an Article 38.37 hearing on that evidence. *See Taylor*, 509 S.W.3d at 476–78; *Burke*,

13

371 S.W.3d at 256–58; *Jones*, 119 S.W.3d at 420–21; *see also Fetterolf*, 782 S.W.2d at 930–31.

### III.   Notice Under Article 38.37, § 3

McDaniel also argues that his trial counsel was ineffective for failing to object to the State's alleged violation of Article 38.37, § 3's, notice requirements. McDaniel points to his trial counsel's acknowledged receipt of information from the State about Cathy's potential testimony. That written acknowledgement was dated May 8, 2018, and trial started on May 21, 2018—a notice period of only 13 days. He argues that, had his counsel secured the full 30 days' notice to which Article 38.37, § 3, entitles him, his counsel would have had more time to prepare for Cathy's cross-examination. The State responds that McDaniel's reliance on the acknowledgement filing is misplaced and that his trial counsel may actually have had more than 13 days' notice of Cathy's information.

No evidence in the record confirms when McDaniel's counsel actually received notice of Cathy's information. And, assuming notice was received only 13 days before trial, no evidence confirms why his counsel chose not to secure notice earlier. Trial counsel sometimes strategically may choose not to make unnecessary formal requests. *See Young v. State*, 425 S.W.3d 469, 471–72 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding that trial counsel's failure to move for deferred adjudication did not infringe objective standard of professional

14

norms: motion was unnecessary because judge, not jury, was assessing punishment). A formal request was unnecessary once McDaniel's trial counsel received Cathy's information, whenever that occurred. And courts have upheld notice periods even shorter than 13 days as reasonable. *See, e.g.*, *Sebalt*, 28 S.W.3d at 821–22; *Self v. State*, 860 S.W.2d 261, 263–64 (Tex. App.—Fort Worth 1993, pet. ref'd). We therefore will not hold that McDaniel's trial counsel's alleged failure to secure an additional 17 days' notice, without more, is "so outrageous that no competent attorney would have" acted similarly. *See Menefield*, 363 S.W.3d at 593; *see also Sebalt*, 28 S.W.3d at 821–22. If the failure to secure the additional time does not rise to that level, then we should not denounce McDaniel's trial counsel as ineffective without first affording counsel an opportunity to explain. *See Menefield*, 363 S.W.3d at 593.

## IV.    The State's Alleged Violations of Rulings *in Limine*

McDaniel further argues that his trial counsel was ineffective for failing to object to the State's alleged violations of rulings *in limine* in his favor. McDaniel points to four remarks made in the State's opening statement and also points to Mary's testimony about McDaniel's extraneous-act assaults against her, which are recounted above. The four opening-statement remarks involved (1) a reference to McDaniel's confessing to making Mary rub his penis until he ejaculated when she was six years old, (2) a reference to his confessing to making her lick his penis,

(3) a preview of Cathy's testimony about the extraneous-act assaults against her, and (4) a reference to "even more acts of sexual abuse."

In the context of ineffective-assistance allegations, an objection to a statement that allegedly violates a ruling *in limine* implicates the underlying material's admissibility. *See Rodriguez v. State*, 129 S.W.3d 551, 558–60 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Matthews v. State*, 960 S.W.2d 750, 753–54 (Tex. App.—Tyler 1997, no pet.). As for the remarks during opening statement concerning Mary and her later testimony, any objection requiring the State to comply with the *limine* order would have ultimately proven to be a futile act because evidence of the extraneous-act assaults against Mary was admissible under Article 38.37, § 1. *See Rodriguez*, 129 S.W.3d at 558–60; *Schneider v. State*, 951 S.W.2d 856, 863–65 (Tex. App.—Texarkana 1997, pet. ref'd). Trial counsel's failure to undertake a futile act is not ineffective assistance. *See Rodriguez*, 129 S.W.3d at 558–60. Therefore, McDaniel's claim from the Mary-related material is insufficient under ineffective assistance's first prong.

Based on our prior conclusion that the testimony underlying the Cathy-related statements would have been admissible, McDaniel cannot meet ineffective assistance's first prong for those statements either. *See Caston*, 549 S.W.3d at 611–14; *Alvarez*, 491 S.W.3d at 370–71.

## V. *Mares v. State* is Distinguishable

McDaniel likens his case to the ineffective-assistance circumstances in *Mares v. State*, 52 S.W.3d 886 (Tex. App.—San Antonio 2001, pet. ref'd), but *Mares* is distinguishable. It involved six alleged instances of ineffective assistance—four from the guilt–innocence phase of trial and two from the punishment phase. *Id.* at 890–93. The court of appeals concluded that none of the guilt–innocence instances constituted ineffective assistance and that one of the punishment instances did not constitute ineffective assistance either. *Id.* at 890–92.

In the remaining punishment instance, the State asked a probation officer to opine on whether someone with a record like the defendant's would be a good candidate for probation. *Id.* at 892–93. The officer testified that a defendant found guilty of a sexual-assault offense and who had been given probation before for a separate violent offense, such as an aggravated assault, would not be a good candidate for probation. *Id.* at 893. The court of appeals noted that "[t]rial counsel's sole strategy at the punishment phase of the trial was to obtain a probated sentence." *Id.* So, to have failed to object to the officer's opinion testimony on the appropriateness of probation for someone with the defendant's criminal history "fell below an objective standard of reasonableness" because the officer's testimony was "directly contrary to Mares's goal at the hearing, and it was inadmissible." *Id.*

Here, unlike the *Mares* probation officer's testimony, the Mary-related material that forms much of the basis of the claims of ineffective-assistance was ultimately admissible. Also, we have no record of McDaniel's trial counsel's strategy concerning the Cathy-related material. For example, counsel may have wanted Cathy to testify so as to expose inconsistencies in her testimony, which could have undermined her credibility. *See, e.g.*, *Lopez v. State*, 343 S.W.3d 137, 141, 143–44 (Tex. Crim. App. 2011). *Mares*, therefore, does not compel a holding of ineffective assistance here.

## VI.    Error Preservation

Finally, McDaniel argues that his trial counsel was ineffective for failing to preserve error for appeal on the evidentiary issues that he otherwise raises. He claims that there can be no conceivable trial strategy for defense counsel's failure to invoke Article 38.37's protections.

Our conclusions as to the admissibility of the Mary- and Cathy-related extraneous-act assaults render McDaniel's position untenable. Failing to object either to the lack of a hearing under Article 38.37, § 2-a(2), or to the alleged *limine* violations concerning Mary's statements was not ineffective assistance because either objection would have been futile. *See Taylor*, 509 S.W.3d at 476–78; *Burke*, 371 S.W.3d at 256–58; *Rodriguez*, 129 S.W.3d at 558–60; *Jones*, 119 S.W.3d at 420–21; *see also Fetterolf*, 782 S.W.2d at 930–31. And had defense counsel

18

objected either to the lack of the hearing; to the lack of 17 more days' notice under Article 38.37, § 3; or to the alleged *limine* violations as to Cathy's statements, the record does not show a reasonable probability that the trial's outcome would have changed had trial counsel made those objections. The other admissible evidence on its own was not so weak as to undermine the reliability of the trial's outcome. *See Bone*, 77 S.W.3d at 833; *Gomez*, 552 S.W.3d at 432–33; *Sanders*, 346 S.W.3d at 34. We hold that McDaniel has not met his burden to show that he received ineffective assistance of counsel.

## Conclusion

We affirm the trial court's judgments of conviction.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).